F I L E D
CLERK OF COURT

2025 JUN 23 PM 7: 12

SUPERIOR COURT
OF GUAM



# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| LOURDES A. LEON GUERRERO, *I MAGA'HÅGAN GUÅHAN*, GOVERNOR OF GUAM, in her official capacity,<br><br>                              Plaintiff,<br><br>          vs.<br><br>DOUGLAS B. MOYLAN, ATTORNEY GENERAL OF GUAM, in his official capacity,<br><br>                              Defendant. | CIVIL CASE NO. **CV0190-25**<br><br><br>DECISION AND ORDER<br>RE. DEFENDANT'S STATEMENT<br>OF OBJECTION |

## **INTRODUCTION**

This matter is before the Honorable Maria T. Cenzon upon the filing of the Statement of Objection ("Objection") by Defendant Douglas B. Moylan, Attorney General of Guam, in his official capacity (hereinafter "AG Moylan") on May 21, 2025. AG Moylan objects to the Honorable John C. Terlaje's (hereinafter "Judge Terlaje") competency to preside over the above-captioned matter under 7 GCA § 6105 and requests his disqualification pursuant to 7 GCA § 6107.

Having considered the Objection and Answer of Judge Terlaje, as well as the applicable statutes and case law and the relevant portions of the record, this Court issues the following Decision and Order **DENYING** AG Moylan's request to disqualify Judge Terlaje and reassign this case.

//

## PROCEDURAL AND FACTUAL BACKGROUND

**A.     The Brief Procedural History of this Case and Objection to Judge Terlaje's Assignment**

On March 18, 2025, Plaintiff Lourdes A. Leon Guerrero, *I Maga'Hågan Guåhan*, Governor of Guam, in her official capacity (the "Governor"), filed a Complaint for Declaratory Judgment ("Complaint"), seeking the following relief:

> [The Governor], by and through counsel, hereby seeks declaratory judgment that the Office of the Attorney General ("OAG") is unavailable to investigate or prosecute [AG Moylan] and Chief Deputy Attorney General Joseph Guthrie ("CDAG Guthrie) [sic] for violations of Guam law, and authorizing [the Governor] to appoint a Special Assistant Attorney General and Special Prosecutor to pursue potential investigations and, as appropriate, criminal or civil actions against AG Moylan and CDAG Guthrie.

*Compl.* at 2. Judge Terlaje was assigned to preside over this matter on March 18, 2025. *See Ntc. of Jdg. Assign.* (Mar. 18, 2025). Notice of the Assignment was served upon the Governor's legal counsels of record Leslie Travis, Jeffrey Moots and Daniel Morris on March 18, 2025. *Id.* There is no date of service upon Defendant Moylan of the Notice of Judge Assignment on the record; however, on April 1, 2025, AG Moylan, by and through his counsels Assistant Attorney General Stephen M. Durden and Attorney William B. Pole, filed a GRCP Rule 12(b)(5) Motion to Dismiss the Complaint,[1] and on April 2, 2025, Judge Terlaje issued a Notice of Oral Argument setting the matter for oral argument before him on May 20, 2025. *CVR 7.1 Form 3* (Apr 2, 2025). Form 3 was Served via Email by the Superior Court of Guam to Defendant's counsels AAG Durden, Attorney Pole, the AG's Office—Civil, as well as to Plaintiff's counsels Travis, Motts and Morris on April 2, 2025. *Id.*

---

[1] See *Deft.'s GRCP Rule 12(b)(5) Mot. to Dismiss the Compl. & Memorandum of Points and Authorities in Support* (Apr. 1, 2025).

Between April 2, 2025 and the hearing date of May 20, 2025, the parties filed several pleadings, including: the Governor's Opposition to the Motion to Dismiss and a separate Motion for leave to Amend Summons(*See Opp'n to Mot. to Dismiss* (Apr. 3, 2025); *Mot. for Leave to Amend Summons, Memorandum of Points and Authorities* (Apr. 3, 2025)); On April 17, 2025, AG Moylan filed a *Reply To Objection to GRCP Rule 12(b) Motion to Dismiss the Complaint* (Apr. 17, 2025) and on May 1, 2025, he filed his Objection to Motion for Leave to Amend Summons. *See Obj. to Mot. for Leave to Amend Summons* (May 1, 2025). Subsequently, on May 15, 2025, the Governor filed her Reply Memorandum in Support of Motion for Leave to Amend Summons. *See Reply Memorandum in Support of Mot. for Leave to Amend Summons* (May 15, 2025). From the time of Judge Terlaje's assignment to this matter on March 18, 2025, to the time of the first hearing before Judge Terlaje's court on May 20, 2025, two (2) months and two (2) days had elapsed. From the time Judge Terlaje's issued his Notice of Hearing on April 2, 2025, until the May 20, 2025 hearing, 48 days had elapsed.

On May 20, 2025, Judge Terlaje held the first hearing in this matter, wherein Attorneys Leslie A. Travis and Jeffrey A. Moots appeared on behalf of the Governor, and AG Moylan appeared with Attorney William B. Pole. *See Min. Entry* (May 20, 2025). At the hearing, a sidebar meeting occurred as well as other case matters. *Id.* As set forth in AG Moylan's Objection, AG Moylan raised the issue of Judge Terlaje's disqualification at the sidebar meeting. *See Obj.* at ¶ 7. However, the minutes do not memorialize the sidebar discussion.

On May 21, 2025, AG Moylan filed his Objection (the "Objection") and personally served Judge Terlaje on May 22, 2025, as required under 7 GCA § 6107. *See Decl. of Svc.* (May 22, 2025). By the date of personal service upon Judge Terlaje of AG Moylan's Objection, 50 days had

elapsed. Judge Terlaje filed his Answer to AG Moylan's Objection (the "Answer") on May 23, 2025.

### 1. The Basis of AG Moylan's Objection.

The gravamen of AG Moylan's Objection is that Judge Terlaje is disqualified from presiding over this matter based upon the mandate of 7 GCA § 6105(a) requiring the judge to "disqualify oneself when the Judge's impartiality might reasonably be questioned." *Obj.* at ¶ 25. (citing 7 GCA § 6105(a)). AG Moylan alleges that "[Judge Terlaje] was appointed by Plaintiff Governor to his current position as a Judge, and this case concerns, at its core, the power of the Governor to potentially remove the Attorney General by appointing a prosecutor to criminal [sic] prosecute to remove the Attorney General." *Id.* at ¶ 20. AG Moylan also alleges that–because the Governor was formerly the President and CEO of BOG, has a son who is the current president and CEO of BOG, is a major shareholder in Bank of Guam ("BOG"), and is a recipient of a pension from BOG–Judge Terlaje must disqualify himself "when the Judge knows he has a financial interest in the subject matter where financial interest is defined as ownership of a legal or equitable interest, however small." *Id.* at ¶ 33. AG Moylan supports his financial-interest argument by identifying Judge Terlaje's two (2) secured loans procured while he was in private practice and a current checking account–all with BOG. *See Id.* at ¶¶ 42-43.

In addition, AG Moylan cites to Judge Terlaje's issuance of a Temporary Restraining Order in CV0290-25, claiming that the order was issued "without notice and on request of Plaintiff Governor, and such Order failed to comply with almost all the requirements for a Temporary Restraining Order." *Id.* at ¶ 22. AG Moylan alleges that these facts "demonstrate an extradjudicial source to suggest the possibility of bias." *Id.* at ¶ 23.

## 2. Judge Terlaje's Answer.

Judge Terlaje's Answer to the Objection is lengthy and detailed, and the Court finds the following responses, made under penalty of perjury, particularly relevant to this Court's recusal determination:

¶ 9. That Defendant's Statement of Objection requests my disqualification on the basis that I was appointed to the judiciary by Governor Leon Guerrero, Plaintiff in this case, on October 25, 2022;

¶ 10. That existing Guam caselaw cited by Defendant, *Ada v. Gutierrez*, specifically rejected the contention that a reasonable person would assume a judge could not be impartial in a case involving the person who appointed him. 2000 Guam 22¶ 22. In this case, the Guam Supreme Court cited *U.S. v. Gordon*, where a court ruled that a judge appointed by President Reagan could oversee a case in which the defendant was accused of attempting to murder the former president. *U.S. v. Gordon*, 974 F.2d 1110, 1114 (9th Cir. 1992); *see In re United States*, 666 F.2d at 696 (ruling that a judge could hear a case involving a governor for whom he did favors in the distant past). The Court further stated that "[i]f a court find a judge fit to hear a case as grave as *Gordon*, we could not find differently in the case at hand." *Ada*, 2000 Guam 22 ¶ 22. The Guam Supreme Court determined that "[w]ithout knowledge of specific deeds, we have no reason to assume that elected officials place individuals in the judiciary for the purpose of having someone in the court who will always favor them." Id. at ¶ 23. As in *Ada*, Defendant in this case has not offered or even alleged any "specific deeds" which might suggest that I would favor the elected official who appointed me.

¶ 11. That recusal for the sole reason that the undersigned was appointed by Governor Leon Guerrero would constitute allowing the recusal statutes to become "presumptive" and would result in the undersigned recusing myself "solely because a party claims an appearance of partiality." *San Agustin*, 2024 Guam 2 ¶ 24.

¶ 12. That Defendant's Statement of Objection also requests my disqualification on the basis that the undersigned received a loan from and has a checking account with the Bank of Guam, and Plaintiff is a current shareholder and former President and CEO of said Bank;

¶ 13. That a reasonable person on Guam, who knows all the facts, and understands the "contexts of the jurisdictions, parties, and controversies involved," including such "realities of the Guam judicial system" as the relatively small number of lawyers in the Guam bar and "the nature of Guam

families," is unlikely to construe the undersigned's ordinary relationship with a Guam business as appearing to create bias. The loan and account which the undersigned holds with the Bank of Guam were obtained in the ordinary course of business just as they would have been with any member of the public, and have never been personally influenced or controlled by Plaintiff. The undersigned disbelieves that a reasonable person "with knowledge of all the facts would perceive a significant risk" that I would resolve this case for Plaintiff "on a basis other than the merits" based on my possessing a Bank of Guam account or loan.

¶ 14. That it furthermore appears that movant is engaging in conduct the Supreme Court of Guam has specifically condemned by raising insignificant connections between myself and Plaintiff as a means to have another judge preside over this case. *See San Agustin v. Superior Court*, 2024 Guam 2 ¶ 24 ("7 GCA § 6105[] is not intended to 'bestow veto power over judges or to be used as a judge shopping device.'") (citations omitted);

¶ 15. That in paragraph 22 of his Statement of Objection, Defendant cites the undersigned's granting of a Temporary Restraining Order against Defendant in CV290-25, arguing it is an "extrajudicial source to suggest the possibility of bias." However, Defendant fails to provide any support for how this order suggests any possibility of bias.

¶ 16. That the undersigned issued the TRO on April 28, 2025, after careful review of all documents filed and full consideration of the law and facts in that case. Ten days later at the hearing for the preliminary injunction in the same case held on May 8, 2025, Defendant requested my recusal in CV290-25 because he had filed a witness list which included Senator Therese Terlaje, who is a sister of the undersigned. This witness list was filed by Defendant on the same day of the hearing at 8:21 a.m., for a hearing scheduled for 9:00 a.m. Counsel for Plaintiff expressed concern at the time that Defendant was "judge shopping", but I agreed to disqualify myself at Defendant's representations that Senator Terlaje was a material witness in the hearing. After my disqualification in CV290-25, I became aware that Senator Terlaje was never called as a witness in the hearing on the Preliminary Injunction under Judge Elyze Iriarte.

¶ 17. That from these circumstances, it is reasonable to infer that AG Moylan was disagreed with [sic] the undersigned granting the TRO, and added Senator Terlaje to the witness list for the purpose of disqualifying the undersigned from the case. Defendant's citation to that TRO as an "extrajudicial source to suggest the possibility of bias" in the present case further cements the idea that AG Moylan disagreed with my decision on the TRO and hopes to "veto" my sitting on his case by raising insignificant connections between myself and Plaintiff. AG Moylan is seeking to "shop" for a different judge in this case, a behavior which has been explicitly

disavowed by the Guam Supreme Court. *See San Agustin v. Superior Court*, 2024 Guam 2 ¶ 24.

*Ans.* at ¶¶ 9-17.

**DISCUSSION AND ANALYSIS**

**A.    The Law Governing Judicial Disqualification Is Set Forth in Guam Statute and In the Model Code of Judicial Conduct.**

**1.  Guam Statutory Mandates.**

Judicial disqualifications are governed by the substantive rules of 7 GCA § 6105 and the procedural rules of 7 GCA §§ 6106 and 6107. The relevant portion of the disqualification statute is Sections 6105(b)(1) and (4),[2] which require that:

> (b) A Judge shall also disqualify himself or herself in the following circumstances, but if, following complete disclosure to all parties in the proceeding of the reasons for his or her disqualification, all parties agree to having the Judge continue to sit in the proceedings, he or she need not disqualify himself or herself:
>
> > (1) Where he or she has a ***personal bias or prejudice*** concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
> >
> > …
> >
> > (4) Where he or she knows that he or she, individually or as a fiduciary, or his or her spouse or minor child residing in his or her household, has *a **financial interest in the subject matter in controversy or is a party to the subject matter in controversy or is a party to the proceeding, or in any other interest*** that could be substantially affected by the outcome of the proceeding;

Correspondingly, Section 6106 compels a judge to disclose a disqualification enumerated under 6105:[3]

> Whenever a Justice or Judge shall have knowledge of any fact or facts which, ***under the provisions of 6105 of this Chapter***, disqualify him or her

---

[2] 7 GCA §§ 6105(b)(1) & (4)(emphasis added).
[3] 7 GCA § 6106 (emphasis added).

to sit or act as such in any action or proceeding pending before him or her, it shall be his or her duty to declare the same in open court and cause a memorandum thereof to be entered in the minutes. It shall be the duty of the clerk to transmit forthwith a copy of such memorandum to each party or his or her attorney who shall have appeared in such action or proceeding, except such parties as are presented in person or by attorney when the declaration is made.

If a judge fails to disclose a disqualifying factor under Section 6105, then, pursuant to Section 6107, any *party* to the action who has appeared in the case may raise the objection to competency.[4] In this regard, Section 6107 provides, in relevant part, as follows:

Whenever a Justice or Judge who ***shall*** be disqualified under the provisions of this Chapter to sit or act as such in any action or proceeding pending before him or her neglects or fails to declare his or her disqualification in the manner provided by this Chapter, ***any party to such action or proceeding who has appeared*** therein may present to the court and file with the clerk a written statement objecting to the hearing of such matter or any trial of any issue of fact or law in such action or proceeding before such Justice or Judge, and setting forth the fact or facts constituting the ground of the disqualification of such Justice or Judge. Copies of such written statement shall forthwith be served by the presenting party on each party, or his or her attorney, who has appeared in the action or proceeding and on the Justice or Judge alleged in such statement to be disqualified.

Within ten (10) days after the service of such statement as above provided, or ten (10) days after the filing of any statement, whichever is later in time, the Justice or Judge alleged therein to be disqualified may file with the clerk his or her consent in writing that the action or proceeding continue without him or her, or may file with the clerk his or her written answer admitting or denying any or all of the allegations contained in such statement and setting forth any additional fact or facts material or relevant to the question of his or her disqualification. The clerk shall forthwith transmit a copy of the Justice's or Judge's consent or answer to each party or his or her attorney who shall have appeared in such action or proceeding. Every such statement and every answer shall be verified in the manner prescribed for the verification of pleadings. ***The statement of a party objecting to the Justice or Judge on the ground of his or her disqualification shall be presented at the earliest practicable opportunity after his or her appearance and discovery of the facts constituting the ground of the Justice's or Judge's disqualification, and in any event before the commencement of the***

---

[4] 7 GCA § 6107 (emphasis added).

*hearing of any issue of fact in the action or proceeding before such Justice or Judge.*

No Justice or Judge who shall deny his or her qualification shall hear or pass upon the question of his or her own disqualification, but in every case the question of the Justice's or Judge's disqualification shall be heard and determined by some other Judge. The Presiding Judge, or next senior Judge, if it is the Presiding Judge's disqualification that is being requested, shall make such assignment within five (5) days after receiving from the clerk the notice that the statement of disqualification has been filed. In the case of a Justice's disqualification, the matter shall be heard by the Supreme Court constituted without the questioned Justice.

If such Judge admits his or her disqualification, or files his or her written consent that the action or proceeding be tried before another Judge, or fails to file the answer within the ten (10) days allowed, or if it shall be determined after the hearing that he or she is disqualified, the action or proceeding shall be heard and determined by another Judge of the Superior Court who is not disqualified. Such other Judge shall be assigned in the same manner as the Judge who was disqualified was assigned to hear the case initially.

## 2. Model Code of Judicial Conduct: Canon 3

Canon 3 of the Model Code of Judicial Conduct[5] (the "Model Code") mandates that "[a] judge shall perform the duties of judicial office impartially and diligently," and 3E.(1)(a) and (c) of the Model Code's disqualification factors mirror those of 7 GCA §§ 6105(b)(1) and (4),[6]

E. Disqualification.

(1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:
    (a) the judge has *a personal bias or prejudice* concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding; ...
    (c) the judge knows that he or she, individually or as a fiduciary, or the judge's spouse, parent or child wherever residing, or any other member of the judge's family residing in the judge's household, *has an economic*

---

[5] The ABA's Canon of Judicial Ethics shall apply to and govern the conduct of Judges of the Superior Court of Guam. 7 GCA § 6103. The Model Code of Judicial Conduct applicable in Guam was adopted by the House of Delegates of the American Bar Association on August 7, 1990, and amended on August 6, 1997, August 10, 1999, and August 12, 2003. It is hereinafter referred to as the "Model Code."
[6] 7 GCA §§ 6105(b)(1) & (4)(emphasis added).

*interest in the subject matter in controversy or in a party to the proceeding or has any other more than de minimis interest* that could be substantially affected by the proceeding;

**B.     AG Moylan has waived his right to object to Judge Terlaje's qualification to preside over this matter.**

As highlighted, above, Section 6107 requires that the statement of a party objecting to the Judge on the ground of his disqualification shall be presented "at the earliest practicable opportunity after his or her appearance and discovery of the facts constituting the ground of the Justice's or Judge's disqualification, and *in any event before the commencement of the hearing of any issue of fact in the action or proceeding before such Justice or Judge.*" 7 GCA § 6107 (emphasis added). The Guam Supreme Court in *Van Dox* has confirmed that statements of objection shall "be presented at the earliest practicable opportunity after discovery of the facts constituting the ground for disqualification." *Van Dox v. Super Ct. (Alcorn)*, 2008 Guam 7 ¶ 44. Thus, the controlling law in Guam "[w]ith respect to the statutory provision requiring that disqualification be urged at the 'earliest practicable opportunity,' the intention is 'clear that failure to comply with the provision constitutes a *waiver*.'" *Id.* ¶ 45 (quoting *Caminetti v. Pac. Mut. Ins. Co. of Cal.*, 139 P.2d 930, 933 (Cal. 1943)(emphasis added)). A finding of timeliness should be construed liberally in the interest of justice. *Id.* ¶ 45 (citing *Eagle Maint. & Supply Co. v. Super Ct.*, 16 Cal. Rptr. 745, 747 (Dist. Ct. App. 1961)). A timely statement of objection is made "prior to any hearing before the challenged judge in the matter." *Id.* ¶ 46 (citing *Hollingsworth*, 236 Cal. Rptr. at 195-96). *Van Dox* also cites to *People v. Panah*, where the court held a disqualification untimely because the facts of the case were known in early September, but the moving party waited until the eve of trial in November to move for disqualification. *Id.* ¶ 46 (citing *People v. Panah*, 107 P.3d 790, 824).

More recently, in *People v. Wia*, 2020 Guam 17, the Guam Supreme Court applied the "silence-by-waiver" rule adopted in *San Union, Inc. v. Arnold*, 2017 Guam 10, and held that "[r]ather than interpreting "agree" to mean that the parties must expressly agree to waive the judge's disqualification, we held that remaining silent constitutes waiver, at least in the context of 7 GCA § 6105(a), "[t]o avoid the possibility of parties 'l[ying] in wait, raising the recusal issue only after learning the court's ruling on the merits.' " *Id.* (quoting *Phillips v. Amoco Oil Co.*, 799 F.2d 1464, 1472 (11th Cir. 1986), *cert. denied*, 481 U.S. 1016 (1987)). Thus, Guam allows for the waiver of Section 6105(b) conflicts by the silence of the party who sits on his right to object. *Id.* at ¶ 29.[7]

Judge Terlaje does not raise the issue of timeliness in his Answer; however, the Court finds that AG Moylan has effectively waived the issue of Judge Terlaje's disqualification through "silence-by-waiver" as applied in *Wia*. Indeed, disqualification of a judge should be brought forward "at the *earliest practicable opportunity. . . before the commencement of the hearing* of any issue of fact in the action *or proceeding* before such Justice or Judge." 7 GCA 6107 (emphasis added); *see also Van Dox* ¶ 46. Although it is not clear whether AG Moylan was aware of the judge assignment on March 18, 2025, unequivocal proof of notice is Judge Terlaje's Notice of Hearing which he issued and which was served upon the parties on **April 2, 2025**. During the interim, substantive motions were filed by the parties for Judge Terlaje to make a ruling leading up to the May 20, 2025 hearing.

---

[7] See also, *Charette v. Charette*, 60 A.3d 1264, 1270-1271 (Maine 2013)(judge had hired a party's brother-in-law to do construction work for him and his daughter was close friends with the same party's daughter, opposing party should have raised an objection based upon the appearance of impropriety before the court issued a judgment unfavorable to him; the appellate court finding that the facts were known to the party because they occurred over the course of twenty-seven years while *all were living in the same small community*).

In viewing the circumstances of the matter and AG Moylan's specific objections, the Court finds that the "earliest practicable opportunity" for AG Moylan to have raised the issue of Judge Terlaje's disqualification was upon Judge Terlaje's assignment, or at a minimum, "at the earliest practicable time" after Judge Terlaje issued his Notice on April 2, 205.[8] AG Moylan objects to Judge Terlaje's assignment due to Judge Terlaje's appointment to the bench by the Governor and Judge Terlaje's financial interest in BOG. Judge Terlaje's appointment to the bench on October 25, 2022, is not a secret or hidden fact unavailable to the public.[9] It stands to reason and common sense that AG Moylan was fully and certainly aware of Judge Terlaje's appointment by the Governor at the time of his assignment to this matter, evinced by AG Moylan's submission of Exhibit F of his Objection that displays the news of Judge Terlaje's appointment on social media. *See Obj., Exh. F.* Further, Judge Terlaje's statutory disclosure of his financial information[10] is also subject to public scrutiny and obtained by AG Moylan in support of his Objection. *See Obj., Exh. E* (Judge Terlaje's certified financial disclosure for calendar year 2023). Thus, the Court finds that AG Moylan's objection was ***untimely*** given that his Objection was made over two months after Judge Terlaje's assignment to this matter; or, assuming he was not aware of the assignment until Judge Terlaje issued the Notice of Hearing on April 2, 2025, over 48 days after the Notice and not until the hearing on May 20, 2025. As such, AG Moylan has effectively ***waived*** his right to object to Judge Terlaje's assignment to this matter.

//

//

---

[8] This finding of AG Moylan's timeliness to raise his Objection is construed liberally in the interest of justice as prescribed in *Van Dox* ¶ 45.

[9] Certainly, Judge Terlaje's appointment was not just a public announcement, but his appointment was also subject to scrutiny by the Guam Legislature as is the case for all Superior Court Judge appointments.

[10] *See* 4 GCA Chapter 13 "Public Official Disclosure Act."

**C.**    **Aside from the waiver precluding his Objection, Judge Terlaje's judicial nomination by the Governor is not sufficient grounds for his disqualification.**

Even if the Court considers *arguendo* that AG Moylan did not waive his right to object, the contention that Judge Terlaje is disqualified from presiding over this matter because the Governor nominated him, without more, is insufficient to disqualify him under 7 GCA § 6105(a). Section 6105(a) mandates that "[a]ny Judge shall disqualify himself or herself in any proceeding in which his or her impartiality might reasonably be questioned, but if, following complete disclosure to all parties in the proceeding of the reasons for disqualification, all parties agree to having the Judge continue to sit in the proceedings, he or she need not disqualify himself or herself."

In guiding the recusal judge's in determining whether to grant an objection to competency on the basis of the disqualification statute, the Guam Supreme Court has instructed:

> "Guam courts apply an objective, reasonable person standard in determining whether there is an appearance of bias meriting disqualification." *[People v. Tennessen, 2010 Guam 12]* ¶ 49 (citing *Johnny*, 2006 Guam 10 ¶ 20). Under this standard, a reasonable person is assumed to know "all the facts, and understands the 'contexts of the jurisdictions, parties, and controversies involved,' including such 'realities of the Guam judicial system' as the relatively small number of lawyers in the Guam bar and 'the nature of Guam families.' " *Van Dox*, 2008 Guam 7 ¶ 32 (quoting *Ada*, 2000 Guam 22 ¶¶ 12-13); see also *San Union, Inc. v. Arnold*, 2017 Guam 10 ¶ 24. "A court should not hypothesize about what the reasonable person would believe only upon hearing the moving party's allegations. Instead, it should decide what the reasonable person would believe about a judge's partiality given all the relevant facts in the controversy." *Ada*, 2000 Guam 22 ¶ 12. Under this objective test, the court "inquires whether a reasonable person would have a reasonable basis for questioning the judge's impartiality, not whether the judge is impartial." *Tennessen*, 2010 Guam 12 ¶ 33 (citing *Sule v. Guam Bd. of Dental Exam'rs*, 2008 Guam 20 ¶ 14). In other words, "the court asks whether a person with knowledge of all the facts would perceive a significant risk that the judge will resolve the case on a basis other than the merits." *Id.* (citing *Clemens v. U.S. District Court*, 428 F.3d 1175, 1178 (9th Cir. 2005) (per curiam)).

[24] "[T]he recusal statutes should not be so broadly construed so as to become presumptive ...." *Dizon*, 1998 Guam 3 ¶ 9. "7 GCA § 6105[ ] is not intended to 'bestow veto power over judges or to be used as a judge shopping device.'" *People v. Camaddu*, 2015 Guam 2 ¶ 80 (quoting *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995) (per curiam)); cf. *Ada*, 2000 Guam 22 ¶ 21 ("We do not want to open a Pandora's box in which parties begin drawing a judge's family tree each time it seems that a judge will rule against them."). "The grounds asserted in a recusal motion 'must be scrutinized with care, and judges should not recuse themselves solely because a party claims an appearance of partiality.'" *Tennessen*, 2010 Guam 12 ¶ 49 (emphasis added) (quoting *In re Aguinda*, 241 F.3d 194, 201 (2d Cir. 2001)). ***This court has stated that "neither '[r]umor, speculation, beliefs, conclusions, innuendo, suspicion, opinion, and similar non-factual matters[,] [nor] mere familiarity with the defendant' give rise to disqualification."*** *Id.* (alterations in original) (quoting *Nichols*, 71 F.3d at 351). A judge should not "distance themselves from cases at the slightest suggestion." *Ada*, 2000 Guam 22 ¶ 15. "A judge's duty to hear a case and keep the wheels of justice rotating is just as strong as his or her duty to remove himself or herself if a reasonable person would not believe in his or her impartiality." *Id.*

*7 [25] Our recusal statute promotes fairness by avoiding the appearance of bias, but a party's one-sided perception of an appearance of bias is not grounds for disqualification. *Sule*, 2008 Guam 20 ¶ 20.

*San Agustin v. Superior Ct. of Guam*, 2024 Guam 2, ¶¶ 23-25.

In contending that the Governor's mere appointment of Judge Terlaje to serve as a judge of the Superior Court therefore creates an automatic disqualification to preside over this case, AG Moylan cites to *Ada v. Gutierrez*, 2000 Guam 22. However, it is unclear whether AG Moylan is arguing that *Ada* supports Judge Terlaje's qualification or whether he attempts to distinguish it from the Objection at bar. He argues first that *Ada* is distinguishable because "not every judge of the Superior Court was appointed by the Plaintiff, i.e. not every judge would appear partial." However, he then likens the Governor's request in this case to *Ada* "wherein the Court had to decide who would be the next Governor of Guam and there were no judges available to hear the case who were not appointed by either the incumbent Governor nor the candidate seeking to

become Governor." *Objection* at ¶ 29. As such, the Court shall consider *Ada* as applicable in this matter to find that Judge Terlaje is *not disqualified* from presiding over this matter merely because the Governor appointed him.

Indeed, *Ada* raised the fact that every Judge and Justice had been appointed by one of the parties, thus "every judge could be accused of appearing partial," and "[i]f every judge could appear partial, it becomes less important for Judge Manibusan to disqualify himself." *Ada* ¶ 14. However, *Ada* continued further:

> Notwithstanding our goal in *Dizon* to encourage disclosure of facts and urge judges to examine their potential for bias, we still noted, "[T]he recusal statutes should not be so broadly construed **so as to become presumptive ...**" *Dizon*, 1998 Guam 3 at ¶ 9. **A judge's duty to hear a case and keep the wheels of justice rotating is just as strong as his or her duty to remove himself or herself if a reasonable person would not believe in his or her impartiality.** *Kansas Public*, 85 F.3d at 1362; *In re Allied–Signal Inc.*, 891 F.2d at 970; *National Union*, 839 F.2d at 1229. We would not want judges to construe our decision in *Dizon* **to mean that they should distance themselves from cases at the slightest suggestion**. Judge Manibusan had valid reasons to hear this case and not just reasons to consider disqualifying himself.

*Id.* ¶ 15 (emphasis added). It is clear that *Ada* confirms that a judge's duty to sit is as strong as his duty to remove himself "if a reasonable person would not believe in his or her impartiality." To be clear, and contrary to AG Moylan's contention, *Ada* is controlling caselaw for a sitting Judge to *not* recuse themselves merely because one of the parties had appointed said Judge. Abundantly compelling to this Court's analysis is *Ada*'s citation to *U.S. v. Gordon. See Id.* ¶ 22 (citing *U.S. v. Gordon*, 974 F.2d 1110, 1114 (9th Cir.1992)). In *Gordon*, a judge appointed by President Reagan was found fit to sit on a matter wherein the defendant was accused of attempted murder of the

President. *Id.* "If a court could find a judge fit to hear a case as grave as Gordon, we could not find differently in the case at hand." *Id.*[11]

AG Moylan raises the issue of the political nature of the proceedings:

> The issues raised by Plaintiff Governor raise a **political question**, apart from being within the providence of the Guam Legislature to provide for establishing a public prosecutor to investigate and prosecute the person holding the position as Attorney General of Guam.

*Obj.* at ¶ 30. The Court does not agree with AG Moylan that the Declaratory Judgment is a "political question," but rather the Declaratory Judgment seeks to determine the legal authority of the Governor to act within the provisions of the Organic Act. The question is a matter of statutory interpretation and does not invoke the "political-question" doctrine.

The "political-question" doctrine has been defined as follows:

> The political question doctrine outlined in *Marbury v. Madison* [5 U.S. 137 (1803)] is primarily a function of separation of powers. *Baker*, 369 U.S. 186, 82 S.Ct. 691. "Questions, in their nature political, or which are, by the constitution and laws, submitted to the executive, can never be made in this court." Marbury, 5 U.S. at 170. The doctrine safeguards the Constitution by ensuring that questions of "political" nature are appropriately within the authority of the Executive or Legislative Branches and, thus, are nonjusticiable. ...".

*Caston v. F. Hoffmann-La Roche, Inc.*, 729 F. Supp. 3d 930, 946 (N.D. Cal. 2024). The U.S. Supreme Court in *Baker v. Carr*, 82 S.Ct 691, 369 U.S. 186 (1962), set forth a lithmus test to determine if a question is political or whether it is an interpretation of statutory law and, therefore, within the powers of the judiciary. The *Baker* factors are:

> (1) the issue has been committed to a coordinate political department by Constitutional text;

---

[11] The Court cites to *Gordon* as relied upon in *Ada*, but the Court is similarly persuaded by more recent cases involving judges sitting in proceedings in which one of the parties appointed the judge. The D.C. Circuit Court in *In re. Executive Office of President* found that a judge sitting in a proceeding wherein the President that appointed the judge was presiding "[would] not 'create in reasonable minds, with knowledge of all the relevant circumstances that a reasonable inquiry would disclose, a perception that [my] ability to carry out judicial responsibilities with integrity, impartiality, and competence [would be] impaired." *In re. Executive Office of President*, 215 F.3d 25 (D.C. Cir.2000).

(2) the judiciary lacks sufficient discoverability or management standards to resolve the issue;

(3) the issue is impossible to decide without an initial policy determination clearly outside judicial discretion;

(4) undertaking independent resolution by the court expresses lack of respect due coordinate branches of government;

(5) a political decision has already been made and there is an unusual need to adhere to that decision without question; or

(6) a multitude of pronouncements from various departments on a single issue is potentially embarrassing.

*Caston*, 729 F. Supp. 3d at 946 (citing *Baker*, 369 U.S. at 217, 82 S.Ct. 691 (rephrased for clarity)). The *Baker* test is applied on a case-by-case basis, and the factors often collapse into one another. *Republic of Marshall Islands v. United States*, 865 F.3d 1187, 1200 (9th Cir. 2017). To find a political question under Baker, only one of the factors must be present. *Id.*

AG Moylan has not articulated any basis upon which the political-question is implicated within the factors as set forth in *Baker,* and it is not clear how the Declaratory Judgment, which seeks a determination by the assigned court of whether the Governor is empowered, under the Organic Act of Guam, to appoint and special assistant attorney general and special prosecutor is a political question under *Marbury vs. Madison* and its progeny. See *Complaint for Declaratory Judgment* at ¶¶ 79, 80. As such, AG Moylan has not satisfied his burden of establishing grounds for the disqualification of Judge Terlaje merely because he was the Governor's appointee.

**D.      Judge Terlaje's financial accounts with Bank of Guam is not a sufficient basis for disqualification because Bank of Guam is not a party to these proceedings.**

AG Moylan's next point of objection is Judge Terlaje's two (2) secured loans, a checking account, and two (2) Paycheck Protection Program ("PPP") loans with BOG while he was in private practice. AG Moylan cites to 7 GCA § 6105(b)(4), arguing that Judge Terlaje should have recused himself "know[ing] he has a financial interest in the subject matter where financial interest is defined as ownership of a legal or equitable interest, however small." *Obj.* at ¶ 33.

A plain reading of § 6105(b)(4) requires that a Judge disqualify themself from a proceeding when they know that they have a financial interest "*in the subject matter in controversy* or is *a party to the subject matter in controversy* or is *a party to the proceeding*." 7 GCA § 6104(b)(4). In these proceedings and a reading of the Complaint for Declaratory Judgment filed by the Governor, BOG is not a *party to the proceeding*, nor is BOG mentioned as any part of the *subject matter in controversy* as prescribed in § 6104(b)(4). As described earlier in the background, the Governor's Complaint requests a Declaratory Judgment against AG Moylan and for the Governor to appoint a special prosecutor. *See Compl.* (Mar. 18, 2025). The argument that Judge Terlaje's current accounts with BOG would somehow dictate the outcome of this particular case because the Governor is BOG's CEO's mother is tenuous, at best, and is illustrative of the Guam Supreme Court's admonishment against "[r]umor, speculation, beliefs, conclusions, innuendo, suspicion, opinion, and similar non-factual matters[,]" serving as the basis for judicial disqualification. See, *San Agustin, supra*. On this basis alone, the Court finds that **disqualification is not warranted**.

Notwithstanding the above discussion, the Court finds it appropriate to discuss persuasive authority in arriving at its decision. In *U.S. v Rogers*, the defendant pled guilty to mail fraud, and Bank of America was the named victim. *Rogers*, 119 F.3d 1377, 1379 (9th Cir.1997). The judge was a stockholder of Security Pacific, which receives shares in Bank of America. *Id.* at 1384. Additionally, the judge owned property that had been leased to a branch of Security Bank, of whom would be later acquired by Bank of America. *Id.*[12] The judge originally sentenced the defendant in the matter to pay restitution to Bank of America. *Id.* However, after appeal, restitution to Bank of

---

[12] Before sentencing, the judge did not have shares or any kind of interest in Bank of America. *Rogers,* 1379. It was during the pending appeal of the matter that the judge obtained an interest in Bank of America. *Id.*

America was not ordered at resentencing. *Id. Rogers* held that the above facts do not raise a reasonable question of impartiality. *Id.* First, Bank of America could not have any financial impact from the proceedings since restitution was not ordered at resentencing. *Id.* Further, *Rogers* found that the judge had no obligation to disclose a financial interest when the business entity or third-party, of whom a judge has a financial interest, is not a party to the proceedings. *Id.* (citing to *U.S. v. Sellers*, 566 F.2d 887 (4th Cir.1977).

Here, the Governor as Plaintiff and AG Moylan as Defendant are the named parties in the instant proceedings. *See Compl.* BOG is not a named party to these proceedings, nor does BOG have any ancillary interest in the proceeding. AG Moylan admits in his Objection that "[t]he two business PPP loans with the Bank issued during the COVID-19 pandemic have since been forgiven." *Obj.* at ¶ 34. Thus, because Bank of Guam is not a party to the proceedings and not a subject of controversy in these proceedings pursuant to § 6105(b)(4) and *Rogers*, the Court finds that **disqualification is not warranted**.

## CONCLUSION

Although this Court finds that the OAG has failed to raise the issue of Judge Terlaje's disqualification timely and therefore has waived any right to advance it now, even if it were raised at the earliest practicable time, no disqualifying facts exist to support Judge Terlaje's disqualification from this matter. This Court finds that Judge Terlaje is not disqualified under 7 GCA § 6105(a), (b)(1) or (4) or Canon 3 of the Model Code from presiding over this case on the grounds that he has an bias or prejudice in favor of the Governor who appointed him, nor is he disqualified on the grounds that his financial accounts with BOG demonstrate any bias or prejudice in favor of the Governor.

For the reasons stated herein, AG Moylan's Statement of Objection and request to disqualify Judge Terlaje is REJECTED and is DENIED. This case shall be returned to Judge Terlaje for further disposition.

**SO ORDERED** this 23rd day of June, 2025.

**HONORABLE MARIA T. CENZON**
Judge, Superior Court of Guam